536 N.W.2d 367 (1995)
James Howard PETERSON, Petitioner and Appellee,
v.
DIRECTOR, NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.
Civ. No. 950043.
Supreme Court of North Dakota.
August 29, 1995.
*368 No brief filed or appearance made on behalf of James H. Peterson, petitioner and appellee.
Monte L. Rogneby, Asst. Atty. Gen., Bismarck, for respondent and appellant.
VANDE WALLE, Chief Justice.
The North Dakota Department of Transportation [the Department] appealed a judgment of the district court, South Central Judicial District, reversing the Department's ninety-one-day suspension of James Howard Peterson's driver's license. Because we disagree with the district court's conclusion that the Department hearing officer performed investigatory functions in violation of section 28-32-12.2, N.D.C.C., we reverse its decision and reinstate the decision of the hearing officer.
At around 2:00 a.m. on September 17, 1994, Bismarck Police Officer John McDonald noticed that a vehicle traveling north on State Street was proceeding with its tires "right on" the lane dividers. After the car crossed "well over the line," the officer activated the lights on his patrol car and the vehicle pulled into a nearby parking lot and stopped. When Officer McDonald approached the vehicle and asked its driver, Peterson, for his driver's license, he noticed the smell of alcohol. Peterson was asked to perform several field sobriety tests which, according to the officer, he failed. Peterson was arrested for driving under the influence of alcohol.
Peterson was later given an Intoxilyzer test, which revealed a blood-alcohol content of .13. The test was administered by Officer James Chase of the Bismarck Police Department. On the official form which Officer Chase filled out with the testing data, he misidentified the standard solution which was used on the test. The solution used, Solution 386, was approved by the state toxicologist. Officer Chase misidentified it as Solution 382, which identified a solution approved by the toxicologist but no longer in use.
While preparing for the hearing regarding Peterson's driver's license revocation, the hearing officer noticed that the identification number of the solution was different than the number on forms from other, contemporarily administered Intoxilyzer tests. In order to obtain an explanation for this discrepancy, she subpoenaed Officer Chase to appear at the hearing and to bring any documents which related to the suspension of Peterson's driving privileges. At the hearing, over the objections of Peterson's counsel, Officer Chase testified that the misidentification resulted from an error in transcription and that Solution 386 had actually been used. He testified that the forms completed for the last *369 test administered prior to Peterson's and the forms for the two tests following Peterson's correctly identified Solution 386, and, therefore, Peterson's test would have been administered using Solution 386.
The hearing officer concluded that Peterson was lawfully arrested and tested. She ordered that his license be suspended for ninety-one days. On appeal, the district court reversed, concluding that, by subpoenaing and questioning Officer Chase, the hearing officer had performed investigatory functions and violated the restrictions of section 28-32-12.2, N.D.C.C.
"When an administrative agency decision is appealed to a district court and then to this court, we review the decision of the agency and look to the record compiled before the agency. Our review of that decision is governed by [section] 28-32-19, N.D.C.C., which requires us to affirm: (1) if the findings of fact are supported by a preponderance of the evidence; (2) if the conclusions of law are sustained by the findings of fact; (3) if the agency decision is supported by the conclusions of law; and (4) if the decision is in accordance with the law. Under [section] 28-32-19(4), N.D.C.C., we must overturn an administrative agency decision if the agency's rules or procedures do not afford the appellant a fair hearing."
Dittus v. North Dakota Dep't of Transp., 502 N.W.2d 100, 102-03 (N.D.1993) [citations omitted].
The mere combination of adjudicative and prosecutorial functions in a Department hearing officer does not, by itself, violate a driver's due process rights. Dittus, supra; see also Pladson v. Hjelle, 368 N.W.2d 508, 511 (N.D.1985) ["Considering the limited scope of the administrative hearing, the adequacy of judicial review ..., and the presence of [the driver]'s counsel at the hearing, we conclude that the combination of adjudicative and prosecutorial functions in the hearing officer does not violate due process."]. However, the legislature has provided safeguards to ensure some separation of the adjudicative and prosecutorial functions. E.g., N.D.C.C. § 28-32-12.2.
But, section 28-32-09(2), N.D.C.C., provides that
"Any hearing officer may require, upon the request of any party to the proceedings conducted by the agency, or upon the agency's or the hearing officer's own motion on behalf of the agency, the attendance and testimony of witnesses and the production of documents and other objects described in a subpoena at a hearing or other part of the proceedings." [Emphasis added].
Section 28-32-12.2(1), N.D.C.C., relied on by the district court, provides that "[n]o person who has served as investigator, prosecutor, or advocate in the investigatory or prehearing stage of a contested case proceeding may serve as hearing officer." However, "a duly appointed hearing officer continues, in effect, to sit in the place of an `agency head' and may be authorized, with respect to the administrative proceeding, to exercise any functions or powers granted to the agency." MacDonald v. North Dakota Comm'n on Medical Competency, 492 N.W.2d 94, 97 (N.D.1992).
The record of the proceedings below does not indicate that the hearing officer served in any of the capacities listed in section 28-32-12.2, N.D.C.C. For example, it does not appear from the record that the hearing officer acted in order to forestall anticipated defenses. The record merely reflects that she noticed a discrepancy among numbers listed on Intoxilyzer forms. Under the authority given her by section 28-32-09(2), N.D.C.C., she subpoenaed the testing officer in order to receive an explanation for that discrepancy. That discrepancy raised a question in the hearing officer's mind to which she could and should have sought clarification. Cf. State v. Foard, 355 N.W.2d 822, 823 (N.D.1984) ["Trial judges ... must be allowed, and even encouraged, sua sponte, to clarify testimony and ferret out elusive facts."]; State v. Lind, 322 N.W.2d 826 (N.D.1982); State v. Yodsnukis, 281 N.W.2d 255 (N.D.1979). Had the evidence revealed the use of an unauthorized solution, a fact apparently unknown to the hearing officer and not immediately apparent from the record, it would have resulted in a dismissal of the proceedings and the return of Peterson's license. *370 We cannot conclude that the hearing officer acted with partiality in subpoenaing the officer, particularly because there is no indication she knew what the officer's testimony would be.
The Department invites us to consider this hearing officer's use of her subpoena power as mere ministerial activity, like the gathering of "boilerplate" documents that was at issue in Dittus, supra. We decline to do so. The type of evidence resulting from the use of the subpoena went beyond mere "boilerplate" documentary evidence, but, as we stated earlier, the use of the subpoena was authorized by statute. Furthermore, the record is free of evidence that the hearing officer in any way prejudged the issues before her. E.g., Ertelt v. North Dakota Dep't of Transp., 491 N.W.2d 736 (N.D.1992).
In his appeal to the district court, Peterson questioned the sufficiency of the evidence tending to prove that the Intoxilyzer test was administered according to the approved method. Peterson neither filed a brief nor appeared to argue before this court. Because the trial court reversed the hearing officer's decision based on the subpoena issue, it did not consider the evidence issue. In some instances this might require remand, but this is not one of those instances. On appeal we review the decision of the agency and look to the record compiled before the agency. Dittus, supra. Our review of the record of the agency proceedings convinces us that a preponderance of the evidence supports the hearing officer's decision that the Intoxilyzer was administered according to the approved method.
We reverse the district court and affirm the hearing officer's decision and reinstate the suspension of Peterson's driving privileges.
MESCHKE, LEVINE, NEUMANN, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.
RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of SANDSTROM, J., disqualified.